## NEW BEDFORD DRY DOCK COMPANY *v.* PURDY, CLAIMANT OF THE STEAMER "JACK-O-LANTERN."

#### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 131. Argued January 27, 1922.—Decided February 27, 1922.

A contract for the wood-work involved in converting a car-float into an amusement steamer by removing the car tracks, relaying the decks as dancing floors and adding a superstructure, steering apparatus. and steam propulsion plant, is a maritime contract for repairs as opposed to original construction, within the Maritime Lien Act of June 23, 1910, and within the admiralty jurisdiction of the District Court. P. 99.

266 Fed. 562, reversed.

APPEAL from a decree of the District Court dismissing a libel to recover damages and enforce a lien for repairs.

*Mr. George R. Farnum,* with whom *Mr. Lee M. Friedman* was on the briefs, for appellant.

*Mr. George L. Dillaway* for appellee.

The identity of the car-float was completely lost by the conversion into an amusement steamer. Mere identity of hull is not sufficient to preserve the identity of the vessel. *McMaster* v. *One Dredge,* 95 Fed. 832; *The Dredge A,* 217 Fed. 617, 629, 630; *Thames. Towboat Co.* v. *The "Francis McDonald,"* 254 U. S. 242.

The work done was not to repair, reconstruct, or furnish anything to the steamer "Jack-O-Lantern," the vessel which the libelant has libeled in this case. Such a craft

was not in existence. The work done was not necessary to the repair of the original car-float. It was only necessary to bring the steamer which was libeled into existence. The car-float itself was destroyed and disappeared as a craft by means of the very work which the libelant did, and a new and entirely different type of vessel came into existence. This was construction of a steamboat and not repairs to a car-float.

The Act of June 23, 1910, gives a lien for." repairs, supplies, or other necessaries," etc. Even if the contract in this case were maritime in its nature, the libelant must show that the work done comes within the description of " repairs." The distinction between repairs and reconstruction is drawn in *The Susquehanna,* 267 Fed. 811; and *The Harvard,* 270 Fed. 668. The statute, so far as it applies, only removes the distinction between foreign and domestic vessels, making no change in general principles of the law of maritime liens. *Piedmont Coal Co.* v. *Seaboard Fisheries Co.,* 254 U. S. 1, 11; *The Oceana,* 244 Fed. 82; *The Hatteras,* 255 Fed. 518; *The Muskegon,* 275 Fed. 348. It does not include reconstruction. *The Schuylkill,* 267 Fed. 811.

It does not create new classes of liens or make maritime what was not maritime before. *The J. Doherty,* 207 Fed. 997; *The Sinaloa,* 209 Fed. 287; *The Hatteras, supra; Thames Towboat Co.* v. *The " Francis McDonald,"* 254 U. S. 242; *Piedmont Coal Co.* v. *Seaboard Fisheries Co., supra; The " United States,"* 193 Fed. 552. It does not include all services, even though the contract be maritime. *The Hatteras, supra; The Convoy,* 257 Fed. 843.

" Repairs " may be very extensive. *Hardy* v. *Ruggles,* Fed. Cas. No. 6,062; *North Pacific S. S. Co.* v. *Hall Bros. Co.,* 249 U. S. 119; *The Harvard, supra; Donnell* v. *The Starlight,* 103 Mass. 227. But they must not change the identity of the vessel.

Mr. Justice McReynolds delivered the opinion of the court.

Claiming a lien under Act of Congress approved June 23, 1910, c. 373, 36 Stat. 604,[1] and seeking to recover for work done and supplies furnished in pursuance of a contract with the owner of the " Jack-O-Lantern," appellant libeled the vessel. The libel was dismissed for lack of jurisdiction. If the agreement between the parties is maritime there was jurisdiction, otherwise there was none.

The facts are not in dispute. They were stated as follows by the District Court:

" The Jack-O-Lantern was originally a car float of the usual type, something over 200 feet long, with neither motive power nor steering gear, and having two lines of track on her single deck. The claimant bought her and proceeded to convert her into a steamer to be used for amusement purposes. The tracks were removed, the deck relaid to make a dancing floor, a large house, or superstructure, was built, inclosing most of the deck, and containing a dance hall, rooms, balconies, etc. Steering apparatus and a steam plant of the propeller type for propulsion were also installed.

" For the purpose of carrying out these changes the contract now before the court was made between the claimant and the libelant. It covers, generally speaking, all the woodwork involved in the changes above outlined. The

---

[1] Section 1. *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

libelant did not install the power plant, but it did prepare the vessel for it. The scow was towed to the libelant's yard for the work to be done. The engine and boilers were there installed. As they were not yet in working condition when the vessel left the libelant's yard, she was towed away."

Upon these facts it held that the contract was not one for repairs or supplies, but for original construction, and therefore non-maritime within the doctrine of *Thames Towboat Co.* v. *The " Francis McDonald,"* 254 U. S. 242. " In rebuilding operations the test is whether the identity of the vessel has continued, or has been extinguished." " The matter turns, as I view it, upon a question of fact; and upon the facts stated I think it clear that the identity of the car float which was delivered to the libelant was completely lost by the conversion into an amusement steamer under the contract in suit. It is true that the hull is substantially unchanged; but mere identity of hull is not sufficient to preserve the identity of the vessel." " The Jack-O-Lantern, with her dance hall, rooms, and power plant, self-propelled and able to maneuver, is an essentially different vessel from the car float, which furnished the hull." In support of this conclusion *McMaster* v. *One Dredge,* 95 Fed. 832, and *The Dredge A,* 217 Fed. 617, 629, 630, were cited.

It is not always easy to determine what constitutes repairs as opposed to original construction. A contract for the former is maritime; if for the latter, it is not. We are not disposed to enlarge the compass of the rule approved in *Thames Towboat Co.* v. *The " Francis McDonald,"* under which contracts for the construction of entirely new ships are classed as non-maritime, or to apply it to agreements of uncertain intendment—reasonable doubts concerning the latter should be resolved in favor of the admiralty jurisdiction. Nor do we think that in

9544°—23——10

cases like the instant one any refined distinction should be made between reconstruction and repairs—the latter word as used in the statute has a broad meaning.

As pointed out in *Piedmont & Georges Creek Coal Co.* v. *Seaboard Fisheries Co.,* 254 U. S. 1, 11, 12, the Act of June 23, 1910, makes " no change in the general principles of the present law of maritime liens, but merely substitutes a single statute for the conflicting state statutes."

This court has not undertaken and will not now essay to announce rigid definitions of repairs and new construction; but we do not accept the suggestion that the two things can be accurately differentiated by consideration of the ultimate use to which the vessel is to be devoted. The view expressed by Judge Hughes in *United States* v. *The Grace Meade,* Fed. Cas. No. 15,243, is both sound and helpful.  "And generally, it may be held as a principle, that, where the keel, stem, and stern-posts and ribs of an old vessel, without being broken up and forming an intact frame, are built upon as a skeleton, the case is one of an old vessel rebuilt, and not of a new vessel.  Indeed, without regard to the particular parts reused, if any considerable part of the hull and skeleton of an old vessel in its intact condition, without being broken up, is built upon, the law holds that in such a case it is the old vessel rebuilt, and not a new vessel.  But where no piece of the timber of an old vessel is used without being first dislocated and then replaced, where no set of timbers are left together intact in their original positions, but all the timbers are severally taken out, refitted, and then reset, there we have a very different case.  That is a case of a vessel rebuilt."

There was jurisdiction in the court below to determine and enforce the rights of the parties.  Its judgment to the contrary must be reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed.*