## THE MOUNTAINEER.

## MARINE HARDWARE CO. v. HALFHILL PACKING CORPORATION et al.

(Circuit Court of Appeals, Ninth Circuit. February 26, 1923.)

No. 3963.

1. **Admiralty ⊛⟶11, 14—Contracts for construction of ship are not maritime, but those for supplies are.**

Contracts made for the construction of a ship or boat of any character, whether it be in or out of the water, are not within maritime jurisdiction, but when such vessel becomes complete and ready for her intended service, contracts for necessary supplies for the intended service are subject to the maritime law.

2. **Admiralty ⊛⟶14—Maritime liens ⊛⟶11—Contract to supply fishing net for vessel already constructed is maritime, entitling lien for materials; "maritime contract."**

Where a gasoline launch has been constructed at another place to engage in purse seine fishing, for which a purse seine net was necessary, and had been brought by her master to a port near the fishing grounds, where the purse seine net was ordered, the contract to furnish appliances for the installation of the net was a "maritime contract," entitling the furnisher thereof to a lien on the vessel.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Maritime Contract.]

Appeal from the District Court of the United States for the Southern Division of the Southern District of California.

Libel in admiralty by the Marine Hardware Company against the gasoline launch Mountaineer, opposed by the Halfhill Packing Corporation and others. From a decree dismissing the libel for want of jurisdiction, libelant appeals. Reversed and remanded.

Loucks & Phister, of San Pedro, Cal., for appellant.

Overton, Lyman & Plumb and L. K. Vermille, all of Los Angeles, Cal., for appellee.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge. The lien that the appellant sought by its libel, filed in the court below against the gasoline launch Mountaineer, her tackle, apparel, and furniture, was for certain specified articles constituting a purse seine net ordered for and received on board the vessel by its owner and master for a fishing voyage. The undisputed facts are that the vessel was built at Tacoma, state of Washington, to be used as a purse seine fishing vessel, and was designed and constructed for that purpose only. It was bought at Tacoma by one Mariani, who there took possession of the boat, and, as her master, brought her to San Pedro, Los Angeles county, stopping at San Francisco on the way to make some slight repair to her engine—his purpose being to engage in tuna fishing in the waters bordering San Pedro.

At San Pedro he ordered and received on his boat the articles constituting the necessary seine for the fishing voyage on which he was about to enter, and for which the appellant asserted the libel which the

court below dismissed for want of jurisdiction. That court based its decision mainly upon a recent decision of the Supreme Court in the case of Thames Towboat Co. v. Schooner Francis McDonald, her tackle, etc., 254 U. S. 242, 41 Sup. Ct. 65, 65 L. Ed. 245. In that case, as will be seen from the opinion of the court, the construction of the schooner was commenced under contract at Groton, Conn., after the launching of the hull of which the contractor was unable to proceed. Thereupon the towboat company agreed with the owner to complete the work, and for that purpose towed the hull to its yard at New London. Later the vessel, so advanced, was towed to Hoboken and finished by a third company.

What the court decided was that the contract for the furnishing of the materials, work, and labor for the completion of the schooner, after her hull had been launched, was not within the jurisdiction of admiralty. In the later case of New Bedford Dry Dock Company, appellant, v. Blake G. Purdy, Claimant of the steamer Jack-O-Lantern, 258 U. S. 96, 42 Sup. Ct. 243, 66 L. Ed. ——, the court said it was not disposed to enlarge the compass of the rule in the last preceding case, saying:

"It is not always easy to determine what constitutes repairs as opposed to original construction. A contract for the former is maritime; if for the latter, it is not. We are not disposed to enlarge the compass of the rule approved in Thames Towboat Co. v. The Francis McDonald, under which contracts for the construction of entirely new ships are classed as nonmaritime, or to apply it to agreements of uncertain intendment—reasonable doubts concerning the latter should be resolved in favor of the admiralty jurisdiction."

[1] The rule recognized and approved by the court in the two cases above cited, and in others there referred to, is, as we understand it, in effect this: Contracts made for the construction of a ship or boat of any character is not within maritime jurisdiction, whether such ship or boat be in or out of water; but, when such vessel becomes complete and ready for her intended service, necessary supplies for such intended use are furnished under and subject to the maritime law.

[2] Applying that rule to the case now before us, we think the launch Mountaineer, built under contract at Tacoma, Wash., and there bought and brought by her master to San Pedro, Cal., was liable to a lien for the various articles needed for the net with which to fish, just as much as for the food and other supplies furnished the men who should handle the net. Such was the view of Judge Benedict in the case of The Hiram R. Dixon (D. C.) 33 Fed. 297. In answering the contention that the contract there involved was one for original equipment, and therefore not maritime, that learned judge said:

"The case of The Thomas Jefferson (People's Ferry Co. v. Beers) 20 How. 393, is cited as authority. In the case of The Thomas Jefferson, a contract for building the hull of a ship was held not to be a maritime contract. The only reason given is that the contract was made on land, to be performed on land, and had no reference to a voyage to be performed. Considering the time when it was made—1857—this decision is to some extent explained by the statement in the opinion that 'the question presented involves a contest between the state and federal government.' In the subsequent case of The Capitol (Roach v. Chapman) 22 How. 129, argued by Judah P. Benjamin in 1859, a contract for building a ship, or supplying engines, timber, or other

materials for her construction, was held not maritime, upon the grounds stated in the case of The Thomas Jefferson, that the contract was a contract for construction, made on land, and had no·reference to a voyage to be performed. These decisions are still law in cases for constructing a ship, made without reference to a voyage to be performed. 'The effect of these decisions is not to be extended by implication to other cases.' Insurance Co. v. Dunham, 11 Wall. 28. They do not control this case, because the contract for these nets did have reference to a voyage to be performed, and, besides, was not a construction contract. The nets were to be used on a then contemplated voyage, and the sole object of the contract sued on was to enable that voyage to be performed. When they were received by the vessel she was already constructed, and had made a voyage from New York to Bristol Ferry. As the decisions of the Supreme Court now stand, wages of shipwrights, earned in the building of a steamer, engines and boilers entering into her construction when she is built, if contracted for without reference to a voyage to be performed, are not maritime contracts. The Supreme Court has yet to hold that contracts to make nets for a contemplated fishing voyage of a fishing vessel are not maritime, because made on land and without reference to a voyage to be performed."

The decree is reversed, and the case remanded for further proceedings in accordance with the views above expressed.