THE KY–ILL.

## MUSCOVALLEY v. AYER & LORD TIE CO.
### No. 5679.

Circuit Court of Appeals, Sixth Circuit.
June 11, 1931.

J. G. Wheeler, of Paducah, Ky. (Charles K. Wheeler and D. H. Hughes, both of Paducah, Ky., on brief), for appellant.

C. C. Grassham, of Paducah, Ky., for appellee.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

HICKS, Circuit Judge.

Appellee, Ayer & Lord Tie Company, brought a libel to recover $1,661.62 and interest, claimed as a balance due for work done and materials furnished in the repair of the ferryboat "Ky-Ill." Muscovalley, the owner, gave bond for its release, and in his answer denied liability. By cross-libel he sought damages on account of alleged inferior workmanship and defective materials used in the work, alleged unreasonable delay in its completion, and alleged negligence in permitting the Ky-Ill to become and remain submerged in water. There was also presented a question of admiralty jurisdiction, i. e., whether the work was new construction or reconstruction. The court overruled the jurisdictional objection, entered a decree for the balance claimed, and disallowed appellant's claim for damages.

Clearly, the court had jurisdiction. See New Bedford Co. v. Purdy, Claimant of The Jack-O-Lantern, 258 U. S. 96, 42 S. Ct. 243, 66 L. Ed. 482. The specifications for the work prepared by a naval architect and relied upon by appellant bear the caption "Specifications of Alterations of Ferry Boat Ky-Ill." The accompanying blue print bears the legend "Proposed Additions to Ferry Boat Ky-Ill." The purpose of appellant was to provide the boat with more free board and greater tonnage. Although the alterations were extensive, yet upon their completion the boat retained the old deck plate, deck angle beams, angle stanchions, angle floors, portions of the bulkheads, and portions of the old bottom. The deck itself, together with the cabin, the railing, and everything above deck, remained undisturbed.

The original answer and cross-libel, filed July 1, 1929, proceeded upon the theory that the work was a repair job. It was not until November 19, 1929, that appellant amended the answer and cross-libel so as to aver that the work was the construction of a new boat. We regard this amendment as an afterthought.

We think the recovery against appellant was right.

The insistence of appellee was that there was no fixed price upon the work, but that it was to be done upon a "cost plus" basis, i. e., the cost of labor and material, plus compensation. Appellant claimed that it was a contract job, to be completed at a cost of not exceeding $5,500, and that he had paid in full.

There were two sets of specifications. The first, dated September 18, 1926, was submitted to Berry, manager of appellee, on September 20th, who, on September 22nd, submitted in writing a flat bid of $4,186 for completion of the work. This bid was not accepted. The second specifications, dated November 22, 1926, were likewise submitted to Berry, whereupon on December 1st, he wrote appellee:

"We have to thank you for the chance of estimating on your ferry boat addition. *We can do this work on a 'cost basis' only.* Many of our customers are having repair work done this way and are well pleased with our service.

"*Roughly we think $5,500.00 should cover your job.* We can pull your boat after Jan. 1, 1927, and complete in about seven weeks." (Italics ours.)

Berry testified that this letter was the basis on which the work was taken. The Ky-Ill was placed upon appellee's ways about January 16, 1927, where it remained undergoing repairs, with the exception of certain periods when it was submerged in high water, until about May 3d. Appellant was present substantially all the time the work was being done. The weight of the evidence is that, although the blueprint and specifications were used generally, yet to some extent at least appellant directed and supervised the work. Leak, general foreman, and superintendent of appellee, testified that the work was done upon a time and material basis, and that he requested appellant to be present either by himself or his representative, and make a daily check of the time and material as the work progressed, so that any misunderstanding could be promptly corrected. These items were entered daily upon "way sheets," and these sheets were signed by appellant as indicating his approval. Copies thereof were delivered to him. The weight of the evidence is that he made no complaint as to any of the items or the cost thereof. The original sheets were delivered by the clerk, who made them up, to Miss Baker, assistant manager and bookkeeper. The account against appellant was correctly made up by her from

these way sheets. The way sheets endorsed by appellee are in evidence.

Before the altered Ky-Ill was launched, appellant made two payments upon the account aggregating $3,000. After the boat was delivered to appellant, appellee wrote him many letters asking for payment, and appellant, with four exceptions, made monthly payments by check until on June 28, 1928, he paid $500, making total payments of $5,500. He declined to pay more. During the correspondence over the account, appellant wrote two letters to appellee. In the first, dated October 24, 1927, he said:

"Enclosed you will find check for *$100.00 to be applied on my account which is all that I can pay at present* as business has been very dull for the past two months.

"*I will send checks on this account as fast as I can.*" (Italics ours.)

On January 27, 1928, he said:

"*Enclosed you will find check for $100.00 to be applied on my account.*

"I realize this is a small amount but I paid $500.00 for months of July and August last year and if business had been normal I could have paid a thousand dollars per month just as easy.

"*I will increase my monthly payments just as soon as I can with as much as I can.*" (Italics ours.)

In support of his contention appellant testified that, after he had received the letter of December 1, 1927, from Berry, he took the blueprint, went to see Berry, Leak (general foreman), and Bishop, who was shop foreman (whether separately or together does not clearly appear), and that they all agreed to save him some money. He was asked:

"Q. Was the cost price fixed by Capt. Berry of the Ayer & Lord; if so what was it? * * * A. Fifty-five hundred ($5,500.00) dollars; that was the maximum price."

We think the effect of this testimony is weakened by the cross-examination of appellant, wherein he states in substance (1) that he made the trade with Leak and Bishop; that they stated "that they would do the work for $5,500, and deliver the boat in about three weeks"; (2) that he "traded in a letter" (the Berry letter of Dec. 1); and (3) that he closed the trade with all three These statements at variance with each oth-

er, and not sufficiently cleared up by explanation, leave his evidence beclouded. He explained that he indorsed the way sheets because he had no alternative; that in the course of the alterations portions of the bottom had been cut from his boat and he could not remove it; that he was anxious to get away with his boat, and signed anything that was presented. It is significant, however, that he made no complaint of the account, even after the Ky-Ill was delivered to him, until the libel was filed. We do not regard it necessary to dwell longer upon the testimony. We conclude that appellee has supported its claim by a preponderance of the evidence.

We think that appellant has failed to establish his cross-libel. Assuming, without deciding, that appellee used either inferior workmanship or defective material, appellant was present, professes knowledge of it, and made no objection, except that one or two workmen were laid off at his request. After the boat was delivered to appellant, he placed it in service, made the payments upon the account as presented, and wrote the letters above referred to without complaint, and has since continually kept the boat in use.

As to the claim for damage and delay by reason of allowing the boat to become submerged in flood water—appellee had two sets of ways, called the upper ways and the lower ways. The boat, without any objection from appellant, was placed upon the lower ways near the river (it seems there was no room for it elsewhere) and, having portions of its bottom removed, it could not be floated to avoid tides in the river. If it could be assumed that there was negligence in thus docking the boat, and that some damage resulted, we agree with the District Judge that the amount thereof was not proven by any determinative or substantial evidence. There was evidence pro and con that the asphalt covering of the deck softened and came off because of its submergence, and appellant presented a canceled check for $252 which he claimed was paid for resurfacing. An examination of this check disclosed, however, that it was issued and paid in May, 1925, or at least two full years before the occurrence complained of.

The decree of the District Court is affirmed.