## THE OWYHEE.

### GREENPORT BASIN & CONSTRUCTION CO. v. SILKWORTH (HAMMONS, Intervener).

### No. 13007.

District Court, E. D. New York.

July 14, 1932.

Single & Hill, of New York City (Gregory S. Rivkins, of New York City, of counsel), for libelant.

John T. Little, of New York City, for intervener.

William J. Mahar, of New York City, for claimant.

GALSTON, District Judge.

This libel alleges the making of a contract with the claimant Silkworth, whereby the libelant agreed to make certain repairs, as specified, to the yacht Owyhee, known at the time of the making of the contract as the "Charming Polly"; that the contract contained an arbitration clause and that arbitrators were in consequence appointed; that an arbitration was had, and the sum of $3,756.39 awarded by the arbitrators to the libelant; and that the claimant refused to make payment in accordance with said award.

The second cause of action set forth is that the work of repairs was the agreed price of $16,800, and that there is a balance unpaid.

The third cause of action sets forth a supplemental contract for the making of additional repairs, and a nonpayment of the amount stipulated in the contract.

Silkworth, as respondent and claimant, contests the award on the ground that it does not constitute a cause of action in rem against

the yacht, and because of alleged misconduct on the part of the arbitrators; also, that the lien, if any, of the libelant is barred by the Lien Law of the State of New York because it was not exercised within the time prescribed by the said statute; and, finally, that the credit of the yacht was not pledged nor were the repairs made on the credit of the vessel.

The intervener joins in the various defenses and asserts that he holds a valid lien of $15,000 on the yacht, and seeks a decree herein of that amount with interest from September 12, 1929.

I find that on February 28, 1929, the libelant entered into a contract with W. S. Silkworth, respondent-claimant for the yacht Charming Polly, later renamed the Owyhee. That the hull of the vessel was delivered to the libelant for the purpose of having the repairs made and materials furnished, and that in accordance with the plans and specifications annexed to the contract, the libelant did effect such repairs and supply such materials. I find also that of the contract price only $14,000 was paid, leaving a balance due of $2,800.

In addition to the work done and materials furnished as defined in the plans and specifications, certain other work and materials were furnished, of the fair and reasonable value of $670.08, no part of which was paid. In addition, there were certain extras furnished consisting of work, labor, and services, which amounted to $1,423.56, no part of which has been paid.

The yacht, with all repairs made and materials furnished, was delivered to Silkworth some time in August, 1929.

I shall now consider the defenses raised.

■ It is contended that the credit of the vessel was not pledged nor relied upon. It is insisted that because the contract contains this clause, "From and after the first payment under this contract, the vessel so far as completed and all materials intended for the construction of this vessel shall become the property of the owner aforesaid," that the libelant cannot resort to the res out of which to secure payment; and reliance is had on the Marshall & Co. v. President Arthur, 279 U. S. 564, 49 S. Ct. 420, 423, 73 L. Ed. 846. But the case here presented is quite different from the situation which arose in the President Arthur. In that case the libelant had sold coal to the owner of the vessel under contracts which provided that payment should be made on delivery by trade accept-

ances indorsed by designated persons. On delivery of the coal the libelant accepted the indorsed acceptances, and at the time that the libel was filed against the vessel, it still retained an unpaid acceptance and afterwards brought suit against the indorsers. It appeared that without the consideration of the indorsements, the libelant would not have sold the coal.

The Merchant Marine Act of 1920, 41 Stat. 988, 1005, subsection P of section 30 (46 USCA § 971), reads: "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel. (June 5, 1920, c. 250, § 30, subsec. P, 41 Stat. 1005.)"

Mr. Justice Sanford, after referring to the provisions of title 46, § 971, just quoted, calls attention to section 974, title 46, U. S. C., 46 USCA § 974 (June 5, 1920, c. 250, § 30, subsec. S, 41 Stat. 1005), wherein it is said: "Nothing in this chapter shall be construed to prevent the furnisher of repairs, supplies * * * from waiving his right to a lien. * * *" And after a review of early authorities on the general subject of maritime liens, the opinion states: "Applying the principles stated in the foregoing cases, we think that the libellant, having made specific contracts for an express security, instead of resting on the lien which the law would otherwise give, must rely on the contracts it made for itself, and cannot now, in a change of circumstances, resort to the lien it would have had in the absence of the special agreements; and that by taking other and different security, upon which it relied, and which it still retains, without stipulating for the retention of the lien, it has waived the lien which it otherwise would have had."

The facts before us do not fall within the limitations of the President Arthur. It would be unreasonable to believe from anything in the facts that were developed at the trial or from a reading of the contract itself that the libelant relied on Silkworth's credit. Moreover, this was not a case in which the seller exacted certain warranties, guaranties, or indorsements. The defense is without merit.

■ Secondly, it is urged that admiralty has no jurisdiction over the alleged causes of action. As to the first cause of action, that

based on the arbitration award, the defense is good.

■ The Paradox (D. C.) 61 F. 860, 861, is cited by the respondent as disposing of the remaining causes of action. In that case the libelant furnished machinery to the yacht. Judge Brown wrote: "If the supply of machinery is to be deemed a part of the 'building' of the vessel, the contract, by the settled law of this country, is not a maritime contract, and cannot be enforced in this court. Though the state law gives a lien for building a vessel, the lien can be enforced in the state courts alone."

The court found as a fact that all the machinery that was contracted for and supplied was for the purpose of completing the construction of the vessel. The original contract was made before the vessel was launched. It appears in that case that: "After the hull, constructed by other persons, was sufficiently advanced, it was launched, towed to the libelant's yard, and the machinery there put in by the libellant company, and by the preceding company, with changes of detail from time to time in the course of construction so as to make the machinery as efficient as possible."

Judge Brown quotes from The General Cass, 1 Brown's Adm. 334, Fed. Cas. No. 5307: "'The true criterion by which to determine whether any water craft, or vessel, is subject to admiralty jurisdiction, is the business or employment for which it is intended, or is susceptible of being used, or in which it is actually engaged, rather than its size, form, capacity, or means of propulsion.'"

Applying that test the libel was reluctantly dismissed.

Such a result in this case would also be extremely regretful; but I find, in New Bedford Dry Dock Co. v. Purdy, 258 U. S. 96, 42 S. Ct. 243, 244, 66 L. Ed. 482, authority for holding that the contract under discussion may properly be called a maritime contract and gives this court jurisdiction in admiralty. The court said: "This court has not undertaken and will not now essay to announce rigid definitions of repairs and new construction; but we do not accept the suggestion that the two things can be accurately differentiated by consideration of the ultimate use to which the vessel is to be devoted. The view expressed by Judge Hughes in United States v. The Grace Meade, Fed. Cas. No. 15,243, is both sound and helpful: 'And generally, it may be held as a principle, that, where the keel, stem, and stern posts and ribs of an old vessel, without being broken up and forming an intact frame, are built upon as a skeleton, the case is one of an old vessel rebuilt, and not of a new vessel. Indeed, without regard to the particular parts re-used, if any considerable part of the hull and skeleton of an old vessel in its intact condition, without being broken up, is built upon, the law holds that in such a case it is the old vessel rebuilt, and not a new vessel. But where no piece of the timber of an old vessel is used without being first dislocated and then replaced, where no set of timbers are left together intact in their original positions, but all the timbers are severally taken out, refitted, and then reset, there we have a very different case. That is a case of a vessel rebuilt.'"

■ A third defense urged is that the libelant is barred by its delay in asserting its lien.

Reliance is had on section 83 of the Lien Law of the State of New York, Chapter 38, Laws of 1909 [Consol. Laws N. Y. c. 33]. That law reads as follows: "Every lien for a debt shall cease if the vessel navigates the western or northwestern lakes, or either of them, or the Saint Lawrence river, at the expiration of six months after the first of January next succeeding the time when the debt was contracted; and in case of any other vessel, at the expiration of twelve months after the debt was contracted. If, upon the expiration of the time herein limited in either of such cases, such vessel shall be absent from the port at which the debt was contracted, the lien shall continue until the expiration of thirty days after the return of such vessel to such port. If proceedings are instituted for the enforcement of the lien within the time herein limited, such lien shall continue until the termination of such proceedings."

The effect of that statute is construed in Nolte v. Hudson Navigation Co. (C. C. A.) 297 F. 758, 764. The doctrine of that case is followed in The Portchester (C. C. A.) 56 F. (2d) 579. Judge Rogers in Nolte v. Hudson Navigation Co. said: "While a statute of limitations is not strictly a bar in admiralty, it has been thought that there is no sufficient reason why it should not be followed in admiralty, as it is also in the courts of equity." But the court gave consideration to the circumstances of the case in order to determine whether to apply the limitation of the statute, for Judge Rogers said: "And it has also been found as a fact by the special master that there were no exceptional circumstances making it inequitable to apply the New York state statute of limitations. He has found on the contrary as a fact that the vessels were regularly operated on the Hudson river and

within the Southern district of New York during the entire period, and that this was known to the claimant during the whole of the time. So that, while the New York statute declared that there could be no lien after the expiration of 12 months, the claimant allowed 19 months to elapse before it took a step looking to the enforcement of a lien. We think this was too late. Its claim to a lien had then become stale and was lost by laches."

This was the approach also in a consideration of a Florida statute of limitations, in The Gertrude (C. C. A.) 38 F.(2d) 946. In that case it appeared that the boat sought to be libeled was by its owner secreted for the purpose of preventing its sizure in libel proceedings, and that the libelant was unable to find the boat until just before the libel was filed.

In consequence I have sought to find in the proof herein such "exceptional circumstances" as possibly were referred to in those two cases. At most, however, I think it can be said that the libelant was diligent in pursuing such rights as it had in personam. The letters demanding payment and the arbitration proceeding can be interpreted in no other way. They might not unreasonably be viewed, as an abandonment of its rights in rem.

Reluctantly I reach the conclusion that the libelant was dilatory in asserting its rights in rem, and in consequence is met with the limitation set forth in the Lien Law of the State of New York. There is no proof either that the vessel was absent from the port at which the debt was contracted at the expiration of the twelve months.

In consequence the libel must be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.