**ARDELL MARINE CORPORATION,**
Libelant,

v.

**THE MARS, her engines, etc., "John" Romano, first name fictitious, true name unknown, the person intended being the captain of said vessel, and Red Stack Towing Co., Inc., Respondents.**

**New London Towboat Co., Inc., Claimant.**

No. 20670.

United States District Court
E. D. New York.

July 7, 1958.

William Evers, New York City, by Haight, Gardner, Poor & Havens, New York City (Eugene C. Brugger, Ridgewood, N. Y., of counsel), for claimant.

Veit E. Kaufman, by Harold Friedman, New York City, of counsel, for libelant.

BYERS, Chief Judge.

In this matter it is necessary to decide upon the efficacy of exceptive allegations to the libel of April 3, 1958, in a cause of "supply, work, labor, services and materials furnished" by libelant to the tug Mars.

The vessel has been claimed by New London Towboat Co., although the owner named in the libel is Red Stack Towing Co., Inc.

Without inquiring into the legal status of the claimant, the court will assume for present purposes that it is presently the owner of the vessel, although the handwritten insertions in the exceptive allegations directed to this subject are informal to say the least.

The issue tendered is that the work concededly done upon the Mars was in the nature of reconstruction rather than

**692**

repairs, whereby jurisdiction in rem must be denied, within the meaning of the applicable statute, Tit. 46 U.S.C.A. § 971.

The affidavit in support of the exceptive allegations was verified May 20, 1958, by one Charles F. Romano who does not identify himself other than to say that he is familiar "with all the reconstruction work performed by the libelant in the within matter, and have been in continuous and intimate contact with all the phases of said work from its inception through all its concluding phases."

The opposing affidavit by libelant's president mentions a person by the same name but without descriptive comment; hence the weight to be attached to the statements of Romano is less than self-evident.

Attached to the Romano affidavit is a carbon copy of a typed "estimate" without date, furnished by libelant, listing 24 "jobs."

The affidavits, pro and con, disclose the following essentials concerning the Mars:

She was a steam tug, built in 1916, and operated as recently as 1956 by the New York Central Railroad Company. Her steam engines had fallen into disrepair but could have been reconditioned.

By some undisclosed process she became the property of Red Stack Towing Co., Inc. and in September, 1957, was towed to the libelant's yard where repairs were contracted for by her owner, apparently as set forth in the said estimate; the work was completed in April of 1958 but was not paid for; of course it should be, and in my opinion the vessel was properly arrested, and should remain in the custody of the court, de facto or de jure, until the amount payable to libelant can be adjudicated.

Of the items listed in the estimate, all but two are clearly in the nature of repairs and nothing more; many of them are so designated.

■ The only two which are open to discussion are 5 (new propeller) and 10 and 11 (main engineroom foundation and floor).

Surely the first was not reconstruction but replacement of a missing part, since the steam engine had been removed, to admit of the installation of a diesel engine.

Whether the propeller had to be replaced for that reason, or because the old one was missing when the vessel was towed to the yard is unimportant.

The insertion of a girder plate and other plates to support the diesel, and the laying of a new engineroom floor and supports were so clearly items of repair, that it is a cause for wonder how an argument to the contrary can be seriously advanced.

This vessel was a partially dismantled steam tug in September of 1957. By April of 1958 the libelant had made such repairs that she became a diesel tug, capable in all respects of functioning as such. If the expression is appropriate in the circumstances, she had been rehabilitated, but in the process she was not reconstructed in whole or part.

Within the test approved by the Supreme Court in New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482, it is clear that the timbers of the hull of the Mars were left intact in their original positions; they are not shown to have been taken out, refitted and then reset. Indeed the estimate cited in claimant's affidavit makes no mention of any structural alterations, nor is it urged that if steam power had been retained, the supporting plates and flooring above referred to would not have needed replacement because of wear and tear imposed upon the old ones, in view of the forty years of service in which the tug had been engaged. Greenport Basin & Construction Co. v. Silkworth, D.C., 60 F.2d 641; Hercules v. The Brigadier General, Absolom Baird, 3 Cir., 214 F.2d 66.

■ While it is true that a maritime lien is a secret one, the order of priority among several lienors presents the occasion for inquiring closely into given cir-

cumstances in the effort to achieve the fundamental purpose of the principles of admiralty, which is to serve the ends of justice. No such critical approach is indicated in a cause in which a vessel owner seeks to exculpate his craft from that which the law provides in order that the vessel itself may be held to secure to the shipwright that which he has contributed to her capacity to function.

The exceptive allegations are overruled and the cause shall proceed as though they had not been filed. The parties would be well advised to consent to an interlocutory decree, with the usual reference to a Commissioner to fix the fair and reasonable value of the repairs that are the subject of the libel.

Settle order, or interlocutory decree, as the parties may be advised.