**ADVANCE WELDING CO., Inc.**

v.

**M/V CORRA D et al.**

**Civ. A. No. 68–2261.**

United States District Court
E. D. Louisiana,
New Orleans Division.

May 15, 1969.

Robert M. Contois, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for plaintiff.

George V. Baus, Adams & Reese, New Orleans, La., for defendant.

## MEMORANDUM OPINION AND ORDER

RUBIN, District Judge:

Plaintiff filed suit seeking to enforce a lien against the M/V Corra D, pursuant to 46 U.S.C. § 971, for work done and materials supplied between April 5, 1967, and June 28, 1967. In January 1967 the Corra D burned in the Mississippi River near Fort Jackson. The underwriters declared the vessel a total loss and paid $50,000 to her owner. Anthony J. Sercovich purchased the damaged vessel for $450 from the underwriters and towed it to plaintiff's shipyard in Venice, Louisiana, where the work was performed.

Plaintiff has filed a motion for summary judgment contending that the record shows there are no genuine issues of material fact and the plaintiff is entitled to judgment as a matter of law. It is undisputed that the hull, ribbing and keel of the vessel were not significantly changed in any way during the repair work and that the cost of the work was $10,464.49. Defendant contends, however, that the vessel Corra D lost its identity as a vessel when it burned and that the work performed by the plaintiff was so expensive that it constituted new construction.

46 U.S.C. § 971 provides in pertinent part:

"Any person furnishing repairs * * * to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem * * *."

■ ▆▆▆ A contract for building a ship or supplying materials for her original construction is not a maritime contract. New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922);[1] The Winnebago, 205 U.S. 354, 363, 27 S.Ct. 509, 51 L.Ed. 836 (1906); Roach v. Chapman, 22 How. 129, 16 L.Ed 291 (1859); People's Ferry Company of Boston v. Beers, 20 How. 393, 15 L.Ed. 961 (1857); Boat La Sambra v. Lewis, 321 F.2d 29 (9th Cir. 1963); The Mountaineer, 286 F. 913 (9th Cir. 1923); and The Minnie V., 24 F.2d 604 (D.Mass. 1927). But once a vessel has been completed and launched, its status as a vessel continues even though a good part of the vessel is destroyed. The test to to be applied in determining when a new construction becomes a vessel is not the same as the one to be applied in deciding when what was admittedly once a vessel has ceased to be one. We focus, therefore, on the cases that involve the real issue here.

The vessel in *New Bedford, supra,* was origininally a car float with two lines of track on her single deck but without motive power or steering gear. Her owner contracted the New Bedford Dry Dock Company to convert her into a steamer to be used for amusement purposes. The tracks were removed, the deck relaid to make a dancing floor, a large superstructure was built enclosing most of the deck and containing a dance hall, rooms and balconies. Steering apparatus and a steam plant were also installed. The contract at issue covered the woodwork involved in the conversion of the vessel. The Court held that the contract was for repairs and therefore within the admiralty jurisdiction. In reaching this conclusion, it said:

"This court has not undertaken and will not now essay to announce rigid definitions of repairs and new construction; * * *. The view expressed by Judge Hughes in United States v. The Grace Meade, Fed.Cas.No. 15,243, is both sound and helpful: 'And generally, it may be held as a principle, that, where the keel, stem, and sternposts and ribs of an old vessel, without being broken up and forming an intact frame, are built upon as a skeleton, the case is one of an old vessel rebuilt, and not of a new vessel. Indeed, without regard to the particular parts re-used, if any considerable part of the hull and skeleton of an old vessel in its intact condition, without being broken up, is built upon, the law holds that in such a case it is the old vessel rebuilt, and not a new vessel. But where no piece of the timber of an old vessel is used without being first dislocated and then replaced, where no set of timbers are left together intact in their original positions, but all timbers are severally taken out, refitted, and then reset, there we have a very different case. That is a case of a vessel rebuilt.' " New Bedford Dry Dock Co. v. Purdy, *supra,* at 100, 42 S.Ct. at 244.

The earlier and later jurisprudence is entirely consistent. In Hardy v. Ruggles, 11 Fed.Cas. page 518, No. 6,062 (E.D.Va.

---

1. "* * * We are not disposed to enlarge the compass of the rule approved in Thames Towboat Co. v. The Francis McDonald, [254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245] under which contracts for the construction of entirely new ships are classed as nonmaritime, or to apply it to agreements of uncertain intendment—reasonable doubt concerning the latter should be resolved in favor of the admiralty jurisdiction. Nor do we think that in cases like the instant one any refined distinction should be made between reconstruction and repairs—the latter word as used in the statute has a broad meaning." New Bedford Dry Dock Co. v. Purdy, *supra,* at 99–100, 42 S.Ct. at 244.

1875), the steam propeller Ruggles was burned to the water's edge while in the waters of North Carolina. Her hull remained untouched and her steam engine and propeller remained in the hull. Besides repairing the damage caused by the fire, the vessel was lengthened 7' 6". The court held that the work done was repairs and not new construction.[2]

In The George W. Elder, 196 F. 137 (D. Or. 1912), the Elder had been sunk, abandoned by the underwriters, and sold. Sixteen months later she was raised and placed in dry dock for repairs. The injury sustained by the Elder was to her substructure, for the length of 43 to 45 feet. Her keel was bent upward and broken in three places, and her keel-plates were likewise stove in, bent and broken. The center of the rent was 80 feet aft from the stem, and was of such proportions that the ship, without careful handling, was liable to break in two. The court held that the Elder was a vessel in the maritime sense receiving repairs and was subject to reasonable dry dock charges and to a maritime lien on account of such charges.[3]

In Ardell Marine Corp. v. Vessel Mars, 163 F.Supp. 691 (E.D.N.Y.), the Mars was a steam tug, built in 1916. Her steam engines had fallen into disrepair in 1957. She was towed to the libellant's yard where repairs were contracted for by her owner. The repair work included installation of a new propeller and new engine room floor. The shipyard replaced her steam engines with diesel engines but her hull timbers were left intact. The tug owner contended that the work was reconstruction, not giving rise to a maritime lien. The court held that the work was repairs, not reconstruction, and the shipyard had a maritime lien. The court further stated:

"Within the test approved by the Supreme Court in New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482, it is clear that the timbers of the hull of the Mars were left intact in their original positions; they are not shown to have been taken out, refitted and then reset. Indeed the estimate cited in claimant's affidavit makes no mention of any structural alterations * * *." Ardel Marine Corp. v. Vessel Mars, supra, at 692.

In the instant case the hull, ribbing and keel of the vessel Corra D remained intact after the fire and were built upon to put the vessel in repair. The general nature of the repairs consisted of substantial changes and renewals of decking and bulkheads on the vessel and sandblasting and painting all portions of the vessel. The fact that the Corra D was towed to the plaintiff's shipyard in Venice, Louisiana, proves that it was capable of navigation while under tow and therefore remained a vessel. We find that the Corra D never lost her identity as a vessel, and the work performed by the plaintiff was in fact repair work. Accordingly,

It is the order of the court that the motion of the plaintiff for summary judgment be, and the same is hereby, granted.

Let judgment be entered accordingly.

---

2. See also, Owyhee, 60 F.2d 641 (E.D.N.Y.) and Texas Sport, 3 F.Supp. 815 (S. D.Tex.)

3. Accord: North Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 39 S.Ct. 221, 63 L.Ed. 510 (1919); Hercules Co. v. S.S. B. G. Absolom Baird, 214 F.2d 661 (3rd Cir.); Ky-Ill, 50 F.2d 70 (6th Cir.); The Princess Matoika, 1 F.2d 233 (2d Cir.) and Varuna, 1951 A.M.C.1916 (E.D.N.Y.)