## In re EAGLE GEOPHYSICAL, INC., et al., Debtors.

## Nos. 99–3481 (MFW) to 99–3497(MFW).

United States Bankruptcy Court,
D. Delaware.

Jan. 2, 2001.

Jim Cooper, Jackson W. Moore, Gardere Wynn Sewell, L.L.P., Houston, TX, for Eagle Geophysical, Inc.

Joel A. Waite, M. Blake Cleary, Young Conaway Stargatt & Taylor, L.L.P., Wilmington, DE, for debtors.

Holland Neff O'Neil, Laurie A. Spindler, Gardere & Wynne, L.L.P., Dallas, Texas, for debtors.

Michael B. McCauley, Palmer Biezup & Henderson, L.L.P., Wilmington, DE, for Ervik Marine Services A.S.

Gary Francis Seitz, Palmer Biezup & Henderson, L.L.P., Philadelphia, PA, for Ervik Marine Services A.S.

Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, for Official Committee of Unsecured Creditors.

Ira Dizengoff, Fred S. Hodara, Akin Gump Strauss Hauer & Feld, L.L.P., New York City, for Official Committee of Unsecured Creditors.

Daniel K. Astin, Maria Giannarakis, Office of U.S. Trustee, Philadelphia, PA.

### *OPINION*[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Debtors' Motion for Summary Judgment denying the Motion of Ervik Marine Services A.S. ("Ervik") for an extension of time to file its proof of claim, to set aside funds from the proceeds of the sale of the vessel Atlantic Horizon and for determination of secured

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

status. Ervik's Motion is premised upon its assertion that it is entitled to a secured claim based on a maritime lien. After hearing oral arguments, we permitted the parties to brief the issue of which country's maritime lien law is applicable and, if American law is applicable, whether general maritime lien law still exists since the enactment of the Federal Maritime Lien Act (FMLA).[2]

We conclude that American law applies, however we find no basis under American law to allow Ervik's secured claim as a maritime lien claim.[3]

## I. FACTUAL BACKGROUND[4]

Prior to October, 1997, Ervik, a Norwegian corporation, and Horizon Exploration, Ltd. ("Horizon"), a British company,[5] had entered into a joint venture whereby they converted a fishing trawler, the Simon Labrador, into a seismic vessel. In 1997, the parties contemplated entering into a similar joint venture agreement to convert a second boat. Under the proposed agreement, Ervik would finance the purchase of the trawler, which would then be stripped by personnel supervised by Ervik and rebuilt as a first rate seismic vessel. Once operational, Horizon would charter the ship from Ervik for ten years, and they would split the profits.

In late 1997, Ervik contracted for the purchase of the Moletta, a Cyprus-flagged fishing trawler, for $3.6 million.[6] The parties anticipated that it would require another $10 million to convert the ship into its intended function as the seismic vessel, Atlantic Horizon. After purchasing the ship in Estonia in January, 1998, title was placed in Horizon's name. The vessel was "stripped out" and Ervik had the vessel towed to Klaipeda, Lithuania, where Ervik began supervising its conversion into a seismic vessel.

Ultimately, Horizon and Ervik never finalized the joint venture. Chief among the issues which they could not resolve was financing for the venture. Still, Ervik continued to refurbish the vessel while the parties, Ervik in Norway, Horizon in Britain, and Eagle in the United States, continued negotiating.[7] Ultimately, when Ervik could not get satisfactory financing, talks of a joint venture ended in May, 1998. Before then, substantial work toward conversion of the vessel had been performed.[8] Thereafter, title to the Atlantic Horizon was transferred by Horizon to Atlantic Horizon, Inc. ("AHI"), a Delaware

---

2. The Federal Maritime Lien Act, first enacted in 1910, was superseded and recodified at 46 U.S.C. §§ 31341–43 in 1988.

3. In their objection, the Debtors raised a number of defenses to Ervik's maritime lien claim, including whether the conversion was a "necessity" and whether Ervik was a stranger to the boat. Because we conclude that there is no general American maritime lien law under which Ervik has a lien, we need not decide those issues.

4. The parties agree that there is no issue of material fact.

5. Horizon Exploration, Ltd., is a wholly owned subsidiary of one of the Debtors herein, Eagle Geophysical, Inc. ("Eagle"), an American company.

6. In June, 1998, the vessel became Liberian-flagged.

7. There is a dispute about how much, if any, Eagle participated in the negotiations. While the Debtors correctly assert that there is no correspondence either to or from Eagle, the evidence presented by Ervik contains a number of references to communications with Eagle.

8. While there is a dispute about whether the work done to the Atlantic Horizon was a rebuilding, conversion, or construction, nobody questions the work done by Ervik on the Atlantic Horizon was substantial. The work commenced in Lithuania in February, 1998, and continued until August, 1998. At any given time up to 150 workers worked on the ship 24 hours a day. Three Ervik consultants supervised the work on the boat full time. During that time, the hull was stripped, the ship was dry docked and new plates welded to it, and the engines, propeller, and gear shafts were removed and replaced. There is evidence that, in the cargo holds alone, over 130 tons of steel were replaced.

corporation and an affiliated Debtor herein.[9] AHI's First Amended Plan of Liquidation ("the Plan") was confirmed March 10, 2000. The Plan provided for the sale of the Atlantic Horizon for $39.6 million. Claimants with maritime liens are to be paid from the proceeds of the sale before the funds are distributed to other creditors.

Ervik asserts a maritime lien under the common maritime law of the United States.[10] Alternatively, Ervik asserts that it has a lien under Lithuanian law.

## II. *JURISDICTION*

This Court has jurisdiction under 28 U.S.C. § 157(b)(2)(B) and (O).

## III. *DISCUSSION*

This case presents two questions: which country's laws are applicable and whether, under applicable law, Ervik has a maritime lien.

### A. *Choice of Law*[11]

■ The basis for Ervik's assertion that United States law is applicable is that "the United States has a significant interest in this case" because the shipowner is American and sought bankruptcy protection under American laws and because contacts with other countries are so insignificant that their laws should not apply. The Debtors argue that American law should not apply because United States maritime lien law was not created to grant maritime liens for providing necessities to a foreign vessel in a foreign country.

The Supreme Court has addressed choice of law in maritime cases three times. *See Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). The Court of Appeals for the Third Circuit has referred to these cases as "the *Lauritzen* triad." *Neely v. Club Med Management Svcs., Inc.*, 63 F.3d 166, 174 (3d Cir.1995) (en banc).

■ In *Lauritzen*, the issue was whether the Jones Act applied to a foreign seaman who was injured on a foreign ship outside the United States' territorial waters. 345 U.S. at 573, 73 S.Ct. 921. The Court concluded that the statutory language of the Jones Act did not render the statute inapplicable to foreigners injured outside the United States. *Id.* at 578–81, 73 S.Ct. 921. The Court noted that "maritime law ... has attempted to avoid or resolve conflicts between competing laws [among other countries] by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved." *Id.* at 582, 73 S.Ct. 921. The Court, therefore, articulated seven factors which it found "alone or in combination are generally conceded to influence choice of law to govern ... a maritime claim." *Id.* at 583, 73 S.Ct. 921. Those factors are: (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured person; (4) allegiance of the defendant shipowner;

---

**9.** It is not clear how (or when) AHI got title to the Atlantic Horizon. In its First Amended Disclosure Statement, AHI asserts that "the vessel has historically been managed by the [AHI's] sister company, [Horizon]." First Amended Disclosure Statement dated February 10, 2000, p. 14. The Disclosure Statement does not mention that title to the Atlantic Horizon was ever vested in Horizon.

**10.** Ervik has repeatedly asserted that its maritime lien is not based on the Federal Maritime Lien Act, but on general maritime law.

**11.** Before we engage in a standard conflict of laws analysis, we must first determine whether any particular statute preempts a choice of law analysis. *Lauritzen v. Larsen*, 345 U.S. 571, 579 n. 7, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 382–83, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve Ticaret A.S.*, 10 F.3d 1015, 1019 (3d Cir.1993). Because Ervik relies upon common law rather than a statute, there is no such preemption.

(5) place of contract; (6) inaccessibility of a foreign forum; and (7) law of the forum. *Id.* at 583–91, 73 S.Ct. 921.

In *Romero,* the Court was faced with another Jones Act case; a Spanish seaman on a Spanish ship was injured in New York while on a voyage beginning in one foreign country and ending in another foreign country. In holding that the plaintiff could not rely upon American law for relief, the Court held that applying choice of law principles "does not depend upon a mechanical application," rather, "the controlling considerations are the interacting interests of the United States and of foreign countries." *Id.* at 383, 79 S.Ct. 468.

Seventeen years later, the Supreme Court decided *Rhoditis,* another Jones Act case. In *Rhoditis,* a Greek seaman on a Greek vessel was injured while in a United States' port. In finding that the injured seaman may proceed under United States law, the Court again stated that the *Lauritzen* test is not mechanical. *Id.* at 308–309, 90 S.Ct. 1731. In addition to the seven factors cited in *Lauritzen,* the Court stated that there may be other relevant factors, including the shipowner's base of operation. *Id.* at 309, 90 S.Ct. 1731.

After evaluating the non-exclusive list of the factors elucidated in the *Lauritzen* triad, we conclude that American law is applicable. The facts of this case are unusual because the ship at issue and the parties have had contacts with a multitude of countries. In this case, one party was located in Norway, and the other was from England. The ship was initially purchased in Estonia and sailed under the flags of Cyprus and Liberia. The repairs were made in Lithuania. At some point, title to the Atlantic Horizon became vested in AHI, an American corporation. The Debtors chose to file for bankruptcy relief in the United States and to avail themselves of American bankruptcy law to sell the

vessel free and clear of liens. As a result, Ervik was required to file its claim and litigate the issues in this jurisdiction. This is not a tort case with a specific situs of injury.

There are three factors which we find favor applying American law: (1) At some point prior to bankruptcy, the Atlantic Horizon became property of an American owner. (2) The Debtors have opted to seek the protections of this Court, and as a result of the Debtors' filing, Ervik is compelled to litigate the matter in this forum. (3) The Debtors used American bankruptcy law to sell the vessel free and clear of liens. No other country has more than one contact which favors applying its laws. While we are conscious of the Supreme Court's teaching that choice of law is not mechanical, we do not find the contacts of any other country to be compelling. We therefore conclude that United States maritime law is applicable.

**B.** *General American Maritime Lien Law*

■ Ervik admits that it does not have a maritime lien under the Federal Maritime Lien Act (FMLA). Instead, Ervik asserts that it has a lien under general maritime lien law which it maintains still exists after Congress enacted the predecessor to the FMLA in 1910.

In support of its position that there is a general non-statutory maritime law, Ervik cites a number of cases and secondary resources. *See, e.g., Racal Survey U.S.A., Inc. v. M/V COUNT FLEET,* 231 F.3d 183, 192 (5th Cir.2000) ("to determine the validity of a maritime lien, we must normally refer to statutory law or those liens that have been historically recognized in maritime law") (*quoting Lake Charles Stevedores, Inc. v. PROFESSOR VLADIMIR POPOV MV,* 199 F.3d 220, 224 (5th Cir. 1999)).[12]

---

12. The statement of the *Lake Charles Stevedores* Court that "the only liens recognized today are those created by statute and those historically recognized in maritime law," is

mere dicta. In the next sentence, the Court concluded that "in order to resolve the issues raised in this case, we must look to the Maritime Commercial Instruments and Liens Act."

Prior to the 1910 and 1920 Maritime Lien Acts, there were conflicting state laws regarding maritime liens. To resolve those conflicts, Congress codified federal maritime lien law which substituted a single federal statute for conflicting state laws. *See Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 11, 41 S.Ct. 1, 65 L.Ed. 97 (1920); *New Bedford Dry Dock Co. v. Purdy (THE JACK O'LANTERN)*, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922). To the extent that any provisions from prior law were not included in the FMLA, we are bound to interpret the remaining sections under the doctrine of *expressio unius est exclusio alterius*[13] and conclude that Congress did not intend that they survive.

By analogy, while pre-Code bankruptcy law continues as the basis of bankruptcy decisions today, it does not overcome the language of the Code itself. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 1949, 147 L.Ed.2d 1 (2000). This is particularly significant in this case in light of Congress' legislative intent to codify maritime lien law in the FMLA to substitute one statute for a morass of conflicting laws. Thus, while general maritime lien law has value, that value is in assisting courts in understanding the principles embodied in the FMLA.

Thus, we conclude that common law maritime lien law has been superceded by statute and is not a basis, by itself, for a secured claim. Since the enactment of the 1910 and 1920 Acts, and the subsequent amendments in 1988, all maritime lien law which existed prior to 1910 has been codified. Of the cases cited by Ervik, none rely solely upon the general maritime law as the basis for allowing a maritime lien.[14]

Even if we were convinced that general maritime lien law could serve as an independent basis for a maritime lien, Ervik has not cited any authority which would support its claim of a lien under the facts herein. "The burden of proof is an essential element of the claim itself, and the party who asserts a claim is entitled to the burden of proof that normally comes with it." *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 1959, 147 L.Ed.2d 13 (2000). The Debtors need not prove the unprovable; *i.e.*, that there is *no* basis for a security interest. Ervik has not cited a single case which grants a maritime lien for necessities to a foreign vessel provided outside the United States. In the absence of any supporting authority, we disallow Ervik's claimed maritime lien.

## IV. CONCLUSION

For the reasons stated above, we conclude that the law of the United States applies to this case. Ervik concedes that it does not have a lien under the FMLA. We conclude that, since the enactment of the FMLA, there is no general maritime lien law. Therefore, Ervik does not have a maritime lien. Even if such general maritime lien law existed, Ervik has failed to cite any basis for its claim. In the absence of any specific basis for a maritime lien, we conclude that Ervik's claim is not secured.

199 F.3d at 224. Ultimately, the Court found that no maritime lien existed.

**13.** This doctrine translates to "the expression or inclusion of one thing implies the exclusion of the other." Blacks Law Dictionary, 602 (7th ed.1999).

**14.** It would undermine the FMLA to conclude that, even in the absence of satisfying the requirements of the FMLA, any party who provides a "necessity" to a vessel is entitled to a maritime lien under general maritime principles.