**IRA S. BUSHEY & SONS, Inc., Libelant,**

v.

**THE Fishing Vessel OCEAN SPRAY, her boilers, engines, tackle, apparel and furniture, etc., and Ocean Fisheries Co., Inc., Respondent-Claimant.**

**No. 20373.**

United States District Court
E. D. New York.
July 12, 1957.

Krisel, Beck & Taylor, New York City, for libelant, Roman Beck, New York City, of counsel.

Enrico S. Sanfilippo, New York City, for respondent-claimant, Anthony J. Randolph, New York City, of counsel.

BYERS, Chief Judge.

There are now before the Court, exceptions by both libelant and respondent to the Report of the Special Commissioner, fixing the amount due to the former in connection with the repairs made by it to the fishing vessel Ocean Spray, which were the subject of the libel filed in this Court on April 25, 1955.

The Commissioner's Report was filed May 27, 1957 and contains a full and complete discussion of all matters comprehended in the Order of Reference to him, dated July 30, 1955, which was in effect an interlocutory decree in favor of the libelant.

By reason of matters later to be referred to, the order directed the Commissioner

> "to ascertain the reasonable value and worth of the work and materials furnished by libelant in repairing the fishing vessel, Ocean Spray, and the amount due and owing from the claimant to the libelant, and if not due so to state and why * * *."

The circumstances above referred to, had to do with the matters alleged in affirmative defenses contained in the claimant's Amended Answer, which in effect sought to inject into the controversy an issue or issues involving alleged agreement or agreements for deferred payments in connection with the said repairs. Those matters were stricken for legal insufficiency, but the facts were developed very fully before the Special Commissioner.

His report contains 24 findings which comprehensively set forth the history of the relationship between the parties to this litigation, and all cognate incidents which arose during the progress of the repairs; the Court is indebted to the Commissioner for thus depicting in detail a somewhat unusual situation.

Upon conflicting testimony touching the nature of the repairs and the various items embraced, he has found that the reasonable value thereof was $31,447.50.

In all, 87 items were presented to him, of which 8 were either disallowed or cancelled.

The Commissioner's Report is presumptively correct (Supreme Court Admiralty Rule 43½, 28 U.S.C.), and in obedience to the provisions thereof, has been reviewed by this Court, which finds no reason to modify or reject the figure so found, even though challenged by both sides.

In addition to the exceptions filed by the claimant, the argument is made for it that the Court is without jurisdiction by reason of the assertion that the Ocean Spray was a dead ship at the time that the repairs were contracted for, which may now be urged to defeat the jurisdiction of the Court to adjudge the existence and dimensions of the lien asserted by libelant.

No such plea was made in either the Answer or the Amended Answer, but since the issue is always deemed to be present, it will now be dealt with.

The Ocean Spray was formerly a survey vessel owned by the United States Navy, and was acquired by the claimant's vendor. One French arranged to purchase the vessel to fit her out for service in the menhaden fishing trade, and it appears from libelant's brief (which claimant does not dispute), that before the necessary repairs had been completed, the vessel was enrolled and licensed for the trade.

The evidence taken by the Commissioner demonstrates that the vessel was altered in many respects, but her hull and general structure were never rebuilt in the process; what was done was to make interior changes necessary to render her fit for the special service for which she was intended; it is of no consequence that she was not actively engaged in trade or commerce at the time of her acquisition by the claimant's vendor, or the said arrangement with French.

See The Jack-O-Lantern, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482; Hercules Co.,

Inc., v. The Brigadier General Absolom Baird, 3 Cir., 214 F.2d 66.

The claimant's reliance upon Murray v. Schwartz, 2 Cir., 175 F.2d 72, and Hanna v. The Meteor, 2 Cir., 179 F.2d 957, is not controlling, in that the Meteor was never sought to be reconditioned or repaired so as to be put into active maritime service. The argument against the Court's jurisdiction is unsound, and is overruled.

The exceptions to the Commissioner's Report are hereby overruled, except as to the matter of interest, later to be mentioned.

As to the allowance for his services, the report states that there were 26 hearings, including two entire days spent on board the vessel; 1,300 pages of testimony were taken and upwards of 100 exhibits were received in evidence. The consideration of the record in its entirety and of the briefs of counsel, necessarily occupied many hours of time.

The Commissioner suggests an allowance of $2,000 for his fees, which neither proctor criticizes.

The suggestion is hereby approved and adopted.

Concerning the question of interest, the most recent general comment by the Court of Appeals in this Circuit is in the case of the Hygrade No. 24, Inc., v. The Dynamic, 2 Cir., 233 F.2d 444, in which the following occurs (page 448):

> "These (an allowance of interest and costs) are matters as to which the District Court has a wide discretion. 3 Benedict, Admiralty § 419 (interest on damages), § 435 (costs)."

See also The Wright, 2 Cir., 109 F.2d 699, in which the Court, referring to the subject of the discretion involved in the award of interest, uses this language (page 702):

> "But the cases show that this is a legal discretion, and the award is to be made whenever damages lawfully due are withheld, unless there are exceptional circumstances to justify the refusal."

Such circumstances were deemed to be present in The Santa Rosita, 1948 A.M.C. 200, in which the parties to a repair job had conducted their relations with a conspicuous lack of clarity with a resultant confused situation concerning the terms of the contract under which the repairs were accomplished; and whether it was modified in essential respects, or completely abandoned and replaced by a new agreement.

The opinion observes that the libelant in that case should not be denied full recovery on a quantum meruit basis but that the conduct of the parties had rendered resort to litigation inevitable, and that the award of interest would not be appropriate as an incident to the quantum meruit admeasurement.

That was an extreme case and is not regarded as a precedent necessarily to be followed here, but it can be consulted with profit in an examination of a course of conduct between a ship owner and repair yard in which neither seems to have displayed an awareness of the ordinary requirements of clear understanding.

The findings contained in this Commissioner's Report reveal that the initial situation was substantially as follows:

A former naval officer by the name of said French, was on friendly terms with the officers of the libelant and made known to them that he could acquire the Ocean Spray for the purpose heretofore indicated by arranging for the necessary finances with Consolidated Fisheries, a corporation having a menhaden plant in Delaware, provided that the necessary conversion job could be accomplished for the round sum of $20,000 to be completed in approximately twelve days.

The libelant agreed to do the work within the required period (Exhibit D-1), and accordingly the vessel was brought to its yard on July 21, 1954, and the work started on July 23, but was not completed until September 23. The language of Finding 12 in part is as follows:

> "During this period there were stoppages or delays partially because men were taken from the job and

put on others in the yard, and thereupon discussions ensued between French and Notine and Mr. Bushey, Jr. during which French complained about the delays, particularly in view of the commitment which he had from Hayes (Consolidated Fisheries) and the importance of despatch to protect that commitment."

The result of the delay to September 23 was that Hayes refused to advance the money for the purchase of the Ocean Spray; it is a reasonable inference, although the findings do not so state, that the failure to deliver the vessel within the time specified rendered her unavailable for the 1954 menhaden season.

It would seem that if the libelant had carried out its original undertaking within the approximate time specified, French's financial arrangement would have been accomplished, and none of the complications which later developed concerning the method by which French's acquisition of the vessel was finally arranged, would have ensued.

These latter developments are set forth in Findings 14 to 22 inclusive, and in connection with these findings the Special Commissioner has inserted appropriate discussion.

What has been related above is deemed by this Court reasonably to constitute such "exceptional circumstances" as to justify a difference of opinion with the Commissioner concerning the propriety of the award of interest from October 1, 1954.

There is of course room for difference of opinion on this subject; the question of whether the libelant's delay and therefore interference with French's ability to carry out his original purpose as known to the libelant, outweighs the latter's claim to interest for its various outlays made during the course of the repair job, is not thought of as one to which the answer is automatic.

In the opinion presently held, the equities favor the respondent, and consequently so much of the Commissioner's Report as recommends the payment of interest from October 1, 1954 will not be followed.

Both sides have briefed the question, but it seems that since litigation was rendered inevitable and has resulted in favor of the libelant, no good reason appears why the decree in its favor should not include costs, which are hereby awarded.

Settle decree in accord with the foregoing, to contain a provision fixing the Special Commissioner's fee.