**944**

**OCEAN FISHERIES CO., Inc., Plaintiff,**

v.

**IRA S. BUSHEY & SONS, INC.,**
Defendant.

**Civ. A. No. 60C648.**

United States District Court
E. D. New York.

Nov. 25, 1960.

Enrico S. Sanfilippo, New York City, for plaintiff.

Krisel, Beck & Taylor, New York City, by Maurice A. Krisel and Max Taylor, New York City, of counsel, for defendant.

BYERS, District Judge.

The defendant seeks summary judgment under Rule 56(b), 28 U.S.C.A., dismissing the complaint "on the grounds of res judicata and collateral estoppel by judgment in that the claims made by plaintiff in the complaint herein and the evidentiary facts upon which they are based, were raised by plaintiff and the evidence thereon fully developed and decided adversely to it on the trial of an admiralty suit litigated to a conclusion between the same parties in this Court."

The narrow question presented is whether the issues tendered by the plaintiff were so adjudicated in a final decree, dated July 22, 1957, bearing the number A 20373.

The title of that cause was "Ira S. Bushey & Sons, Inc., Libelant, against The Fishing Vessel Ocean Spray, her boilers, engines, tackle, apparel and furniture, etc., and Ocean Fisheries Co., Inc., Respondent-Claimant."

Since the latter named is the plaintiff in this cause, and the libelant is the defendant, the identity of parties is apparent.

As to the issues here sought to be raised as compared to those in the admiralty cause, a brief comment is required:

Article Second of the libel (filed April 25, 1955) states that between July 23, 1954 and September 23, 1954, the libelant at its shipyard in the Borough of Brooklyn,

> "at the special instance and request of the master, agent and owner of said vessel, performed work and furnished materials in repairing said vessel and furnished and delivered to said vessel ship chandlery materials and supplies which were fit, proper and necessary for said vessel at the price or value in the aggregate of the sum of $44,347.65, no part of which sum, although duly demanded, has been paid."

Exhibit A attached to the libel is a statement in itemized form of the items for which decree was sought.

The amended answer (filed June 30, 1955) denied the above-quoted portion of the libel

"except (respondent) admits that the Libelant performed work and furnished materials to the F/V 'Ocean Spray' and received an alleged statement of account as per Exhibit 'A' attached to the Libel and Complaint but specifically denies that the work performed and the materials furnished to said vessel were in the amount of or the reasonable value and worth of the sum of $44,347.65 as claimed by the Libelant."

The maritime jurisdiction of this Court was in terms admitted.

The said pleading also contained what was called a first, separate and complete defense in which it was alleged that during the progress of the work and prior to its completion, the libelant and the claimant-owner (this plaintiff) for valuable consideration

"agreed that the ultimate cost of said repairs and materials would be paid to the Libelant over a period of two years after the completion of said repairs, said agreement to be secured by the sale of the F/V 'Ocean Spray' to the Libelant and its immediate resale to the Claimant-Owner for an increased consideration, which would include the repair bill, to be paid to the Libelant over the aforesaid period of two years under the usual terms and conditions of a proposed conditional bill of sale."

That the said parties agreed to embody the aforesaid agreement into formal written documents on the completion of the repairs and that after that took place the libelant "contrary to the agreement aforesaid, wrongfully refused to comply with the terms thereof" and made demand for immediate payment.

Willingness is also alleged on the part of the claimant to pay the proper charges in accordance with the agreement above referred to, and that the claimant has been so damaged that it cannot be charged "with the alleged damages set forth in the libel and complaint."

The second so-called separate defense repeats the matters last above described, and asserts that by reason of the conclusion of the agreement aforesaid, the claimant owner released and/or stopped all negotiations with third parties for similar financing, placing complete faith in the agreement with the libelant, all of which facts were at all times known to the libelant, and that with knowledge of the consequences to the claimant (this plaintiff) "Libelant wantonly and illegally breached its said agreement as aforesaid, and thereafter commenced this action by attacking the vessel."

The foregoing is followed by an allegation of loss of profits and the statement that claimant

"may ultimately lose the vessel itself, all to its loss and damage in a sum which at the present time cannot be determined but which, upon information and belief, will be in excess of the claim herein made by the Libelant."

Then follows:

"Fourteenth: That if the Libelant is found to have been damaged herein, the damage to the Claimant-Owner should be determined and applied as a set-off to any damages that may be found to be due and owing to the Libelant."

The foregoing pleading was the subject of exceptions filed June 30, 1955 on the ground that the denials and defenses pleaded are frivolous and "insufficient as a matter of law and constitute no defense to the libel * * * and are inadequate, incomplete, vague, irrelevant and incompetent."

This Court, being of the opinion that the said exceptions were well taken and that the said separate defenses were legally insufficient to plead a contract for deferred payments of the cost of repairs, signed an order on July 30, 1955 striking the first and separate defense contained in Articles Fifth through

Fourteenth and referred the matter to Mr. Frank C. Mason, as Commissioner

"to ascertain the reasonable value and worth of the work and materials furnished by libelant in repairing the fishing vessel, Ocean Spray, and the amount due and owing from the claimant to the libelant *and if not due so to state and why* and to report thereon to this Court with all convenient speed."

The words above italicized were inserted in my handwriting in the order as proposed by the libelant, in order to afford to the claimant the opportunity to present evidence tending to sustain his apparent assertion that during the progress of the repairs the minds of the parties met upon an arrangement of some kind whereby the repairs would be paid for over an extended period of time and that in good conscience the libelant's apparent cause should not be permitted to proceed to a decree in its favor for any amount found to be due by reason of the matters alleged in the libel.

The result that was sought to be achieved was to avoid an inequitable result in the ultimate disposition of the controversy, should there be facts developed before the Commissioner tending to establish a lack of fair dealing between the shipyard and the owner of the vessel, even though the Court had felt constrained to sustain the exceptions to the amended answer above referred to.

Since it is the effort in the admiralty to seek to do justice between the parties with a minimum of deference to technical requirements of pleading, the experienced Commissioner interviewed the Court on the general subject, and the brief filed for this defendant contains the following:

"Hearings Before the Commissioner

"At the outset of the hearings, libelant objected strenuously to evidence touching upon the issues contained in the affirmative defenses and set-off in view of Judge Byers' order dismissing these defenses (*Commissioner's Record*, p. 78).

However, the Commissioner, after consultation with Judge Byers, made the following statement on the record (pp. 347–8):

"'The Special Commissioner: Gentlemen, with respect to the cross examination of Mr. Notine, in connection with possible agreements between officers of the libelant and Mr. French, or others representing the respondent-claimant, as to when the bill in suit was to be paid, which matter was first indicated at Page 78 of the reference hearing of September 8, 1955, I wish to inform counsel that I have consulted with Judge Byers who has instructed me to permit the widest latitude in cross examination on this subject.

"'The Court has authorized me also to state that it is its desire that the case be "well ventilated," an expression of Judge Byers himself.'"

The hearings before the Commissioner resulted in a 1300-page record and in deference to the request of the Court, the Commissioner considered at length and in detail the various matters which the plaintiff now seeks to relitigate in this civil proceeding.

As appears from his report and supplemental report filed May 27, 1957, the Commissioner allowed the widest latitude to witnesses. Thus:

"With regard to the direction to your Commissioner to determine whether the amount owing is not due and, if so, his reasons for so reporting, there was further extended testimony taken as to the circumstances attending the arrangements between the parties when they were originally negotiating as well as during the course of the repairs, and following their completion.

"In this latter respect, your Commissioner must express the view that both parties, no doubt with well intentioned confidence in each other by reason of a friendly relationship, failed to exercise that business

acumen which the situation demanded and as a result, the whole transaction has been a most unfortunate experience for both of them."

The report contains twenty-four findings, the last of which is in itemized form and indicates certain cancellations and disallowances of items stated in Exhibit A attached to the libel.

The said report came before the Court on exceptions filed by both parties and at the hearing those of the libelant were withdrawn and the claimant-respondent's exceptions to the allowance of interest was sustained. Otherwise the report was confirmed in its entirety and the Commissioner's fees were fixed, the final decree being dated July 22, 1957.

No appeal was taken from that decree, and it is the considered judgment of the undersigned that the failure on the part of this plaintiff, the claimant-respondent in the admiralty cause, to seek to review that determination—after a lapse of about three years—cannot now be avoided under the guise of civil litigation which has for its obvious purpose a redetermination of issues which have been fully and fairly tried and determined with the result that this defendant was awarded a decree in the sum of $31,-447.50 without interest but with costs.

The exceptions were discussed in an opinion of this Court dated July 12, 1957, Ira S. Bushey & Sons, Inc. v. The Ocean Spray, 160 F.Supp. 815.

The present complaint demands judgment in the sum of $500,000 and the causes as pleaded are the following:

The first is that there was a contract between the parties for repairs to the Ocean Spray at an estimated cost of $19,000 to be completed within twelve working days, which contract the defendant failed to perform "within the time fixed by the aforementioned contract as extended by agreement between the respective parties" whereby "the plaintiff lost its only source of funds from which to pay for the conversion of the Fishing Vessel Ocean Spray; lost title to the said vessel through a Marshal's sale brought about by the said defendant to satisfy the lien of the said defendant for the work performed on the said vessel; and lost the profits anticipated by it from the operation of the said vessel, all to its loss and damages in the approximate sum of Five Hundred Thousand and 00/100 ($500,000.00) Dollars."

The second cause alleges in effect that when it became apparent that the repairs would not be completed within the period mentioned, the plaintiff ordered that the same be discontinued, but the defendant requested plaintiff to permit it to continue and complete the work "with the promise that it would accept payment therefor on a deferred basis out of the earnings of the Fishing Vessel Ocean Spray," and that the defendant represented to the plaintiff that the former would undertake to finance the cost on a basis to be agreed upon, whereby the plaintiff permitted the continuance of the work "and refrained from obtaining other financing with which to pay for the work." That those statements and representations were "false and fraudulent" and were so known to the defendant but unknown to the plaintiff. That the plaintiff requested that the aforesaid agreement be reduced to writing but that was not accomplished because the defendant "fraudulently and maliciously delayed preparing the same * * * and, when said proposals were accepted by the plaintiff, by withdrawing therefrom. As a result thereof, when the conversion of said vessel was completed, no written agreement had been concluded, and the defendant contrary to its statements and representations and its agreement aforesaid, refused to finance the cost of the conversion work * * * but, rather, submitted to the plaintiff a false and fraudulent bill in the sum of Forty-Four Thousand Three Hundred Forty-Seven and 65/100 ($44,347.65) Dollars and demanded immediate payment thereof," all to the damage of the plaintiff in the sum of $500,000.

The third cause attacks the bill as rendered by the defendant to the plaintiff as involving items chargeable to other jobs

and that the bill was "far in excess of the fair and reasonable value of the work performed by the said defendant * * *."

The failure of this plaintiff to seek a review on appeal of the decision in the admiralty cause justifies the granting of this motion on the ground of res judicata.

A quotation may be permitted from the case of Macris v. Sociedad Maritima San Nicolas, etc., 2 Cir., 271 F.2d 956, at page 958:

> "The action below granting the defendants' motion for summary judgment was plainly right. The prior action had been unequivocally and finally dismissed on the merits, even though the plaintiff had selected as the only ground of appeal the denial of the motion to amend. Since the claim raised in the pending case, if the plaintiff had seasonably chosen to do so, might have been presented in the prior action and was indeed part of the same claim, the defense of res judicata was good. Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; Williamson v. Columbia Gas & Electric Corp., 3 Cir., 186 F.2d 464, certiorari denied 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355. Cf. Moore's Federal Practice § 2.06(6)."

In the opinion presently held, this plaintiff has had its day in court on the issues now sought to be raised in the civil litigation; the cause is the same and the disguise is unsubstantial. The fact that plaintiff's efforts did not lead to success cannot justify imposing upon the court the duty of retrying that which has been legally and effectually disposed of.

It may be assumed for argument that the allegations contained in Paragraphs 13 to 19, inclusive, of the complaint are intended to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure; they will be seen to be insufficient because they do not purport to recite a knowingly false statement of facts or existing condition of affairs, upon which the plaintiff relied to its detriment.

The exposition of this Rule contained in the Second Edition of Moore's Federal Practice at page 1907 may be consulted with profit.

The utmost that can be said for the pertinent paragraphs of this complaint is that this defendant stated an intention which did not exist with regard to the future financial relations of the parties. If such a representation was made, it was not of an existing fact but of a state of mind—notoriously a variable—and has been carefully examined by the Commissioner, whose comment on the subject is as follows:

> "Your Commissioner cannot find, in the evidence, legal reason for the view that whatever amount is owing is not presently due. In neither case of proposed financing was there any clear understanding between the parties only because no express agreements were written, as they should have been. Undoubtedly at times, libelant felt morally bound to aid claimant and particularly Commander French in their dilemma created by libelant's failure to complete the repairs with reasonable promptness. Nevertheless, your Commissioner reports that, by reason of the unfortunate oral and incomplete understandings between the parties, arising perhaps from misplaced faith in friends, whatever amount is awarded herein is presently due and owing to the libelant."

Findings 6 to 24, inclusive, with the discussion which is interspersed at convenient intervals, disclose the meticulous care with which the Commissioner examined into all the circumstances attending the relationship of these parties, and, as has been said above, the failure of this plaintiff as claimant and respondent in the said cause, to seek a review of this Court's decision overruling the exceptions filed to the said report, renders the adjudication embodied in the final decree to be final and binding on both parties.

It results that the defendant's motion to dismiss must be granted. Settle order.