321 F.2d 29
 The BOAT LA SAMBRA, No. CF 8760 AX, her engine, tackle, apparel and furniture, and K. Reafsynder, Appellants,
v.
Edward LEWIS, doing business under the fictitious name and style of Newport Marine Radio, Appellee.
The BOAT BEANY, No. CF 8761 AX, her engine, tackle, apparel and furniture, and Abe Diamond, Appellants,
v.
Edward LEWIS, doing business under the fictitious name and style of Newport Marine Radio, Appellee.
 No. 18330.
 No. 18331.
 United States Court of Appeals Ninth Circuit.
 August 12, 1963.
 
 Higbie & Higbie, and Richard A. Higbie, Balboa Island, Cal., for appellants.
 Penney & Penney, and John C. Penney, Newport Beach, Cal., for appellees.
 Before HAMLEY, KOELSCH and BROWNING, Circuit Judges.
 KOELSCH, Circuit Judge.
 
 
 1
 These are appeals in separate suits commenced in the District Court to enforce maritime liens asserted by the libelant, Edward Lewis, for the agreed price of a ship-to-shore radio, furnished to the boat "Beany" and an automatic pilot for the boat "La Sambra," together with the cost of installation. We treat them together because they tender but one common question; that is, whether the cases came within the admiralty jurisdiction of that court.
 
 
 2
 The answer depends upon whether the contracts for this equipment and its installation related to the repair[1] of completed boats or to their original construction, for the settled law, applicable here, is that "a contract for the former is maritime; if for the latter, it is not." New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922).
 
 
 3
 The trial court found that when the equipment was furnished to the boats, each was a completed vessel. But after reviewing the entire evidence we are compelled to conclude that the court erred in so finding.
 
 
 4
 The evidence is for the most part undisputed and where a dispute does exist, we have accepted libelant's version of the facts. Thus it appears that both appellants contracted to purchase Chris Craft boats from K. W. Boat Sales, a sales distributor at Newport Beach, California. The contracts also provided that the boats were to be delivered to their new owners equipped with certain electrical apparatus, including a radio for the Beany and an automatic pilot for the La Sambra. K. W. did not itself handle or install such equipment and it often sub-contracted the same to Lewis, whose shop was nearby in that neighborhood. Although there is a conflict in the evidence on this point, the district court found that both appellants dealt directly with Lewis for the equipment and we of course accept those factual conclusions.
 
 
 5
 Lewis saw the boats prior to their launching when they were still in their shipping crates on K. W.'s premises. He inspected them when he first visited K. W.'s yard to determine what work would be required to install the equipment. He also knew that the appellants were then purchasing the boats from K. W., that they were new boats and had never previously been in service.
 
 
 6
 The installations were performed over a period of several days and required considerable fitting and some alteration in the boats themselves. The work was begun on land prior to launching and was completed while the boats were still in K. W.'s slip. During this period both owners visited K. W.'s premises from time to time in order to watch the work as it progressed and learn when the boats would be ready.
 
 
 7
 Libelant argues that the cases here are within the rule of The Mountaineer (Marine Hardware Co. v. Halfhill Packing Corp.), 286 F. 913 (9th Cir. 1923), a suit to recover the price of a purse seine net supplied to a fishing vessel. But that case is inapposite. There, after the owner had taken possession of the vessel and sailed her from Tacoma, Washington to San Pedro, California the gear was purchased, and in contemplation of an intended voyage; the relation of the contract to navigation and commerce was direct.
 
 
 8
 These cases are more like Thames Tow-boat Company v. The Schooner "Francis McDonald", 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920), involving the construction of a schooner. After the work was begun and the hull launched the shipbuilder found itself unable to proceed; thereupon the owner contracted with a second company (the libelant) to complete the vessel, and for that purpose the hull was towed to the latter's yard. It was there that the materials, work and labor, for the recovery of which the action was brought, were furnished. Later the vessel was towed to still another builder and finished. The Supreme Court affirmed the lower court's dismissal of the libel for lack of jurisdiction, saying, "When received by appellant the schooner was manifestly incomplete — her masts were not in, the bolts and beams and gaff were lying on deck, the forward house was not built, and she was not `in condition to carry on any service.' [Id. at 243, 41 S.Ct. 65] * * * Notwith-standing possible and once not inappropriate criticism, the doctrine is now firmly established that contracts to construct entirely new ships are non-maritime because not nearly enough related to any rights and duties pertaining to commerce and navigation. It is said that in no proper sense can they be regarded as directly and immediately connected with navigation or commerce by water. [citations omitted] And we think the same reasons which exclude such contracts from admiralty jurisdiction likewise apply to agreements made after the hull is in the water, for the work and material necessary to consummate a partial construction and bring the vessel into condition to function as intended." Id. at 244-245, 41 S.Ct. at 66.
 
 
 9
 Similar also is The Count De Lesseps, 17 F. 460 (D.Penn.1883), a case in which a floating scow was constructed in New Jersey and towed to Pennsylvania, where machinery and materials consisting of a derrick, buckets and other dredging equipment were installed. The court held that the equipment was added in the original construction of the vessel, emphasizing, "All the materials and work were contemplated as necessary to complete the structure from the beginning * * *."
 
 
 10
 And an eminent authority has also stated the rule to be thus; "in the United States it is settled by authority — whether rightly or wrongly — that a contract for building a ship, or supplying materials for her construction, is not a maritime contract. The Supreme Court so held in 1857 in People's Ferry Co. v. Beers, 20 How. 393, 61 U.S. 393, 15 L.Ed. 961 and has followed that ruling both in dicta and decision in every subsequent case in which the subject has been presented or reference to it made. The supplying of the original equipment of the vessel as well as the building of the hull is held to be outside of the admiralty jurisdiction. Even after the vessel is launched, while she is not yet sufficiently advanced to discharge the functions for which she is designed, the materials, work and labor for her completion are not the subject-matter of admiralty jurisdiction. The contract is treated as one merely preliminary to the use of the ship as an instrumentality of commerce and navigation." 1 Benedict, Admiralty § 69, at 143-45 (6th ed. 1940).
 
 
 11
 The contracts for the equipment involved in these cases are within the rule last stated. Lewis had previously installed accessories on new boats sold by K. W., and here he was aware that the boats were new. The appellants intended, and it is clear beyond dispute, that Lewis knew these accessories constituted original equipment — they became an integral part of the boats; their function was to make the boats safer and more useful as pleasure craft; they were purchased before the boats were ever used; and they were installed when the boats were still undelivered and at the dealer's premises.
 
 
 12
 The judgments are reversed and the cases are remanded to the District Court with directions to dismiss.
 
 
 
 Notes:
 
 
 [1]
 41 Stat. 1005 (1920), 46 U.S.C. § 971 (1958) provides:
 "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel." The term, "repairs," as used in the statute, has a broad meaning [New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922)]; it includes the alteration and improvement of a vessel. The Harvard (Ocean Engine & Boiler Works, Inc. v. Olympia Shipping Corp.), 270 F. 668 (D.N.Y. 1920).