**BILL FOWLER, INC., Plaintiff,**

v.

**John STADLER, Jr., etc., et al., Defendants.**

**No. 82–1977–CIV–EPS.**

United States District Court,
S.D. Florida,
Miami Division.

Feb. 22, 1983.

Henry H. Bolz, III, Miami, Fla., for plaintiff.

David F. McIntosh, Miami, Fla., for defendants.

MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF JURISDICTION AND DENYING MOTION FOR DEFAULT

SPELLMAN, District Judge.

THIS CAUSE is before the Court on Motion To Dismiss For Lack of Jurisdiction filed by Defendants and Motion For Default filed by Plaintiff and the responses and memorandum filed in connection therewith. On Thursday, February 10, 1983, this Court conducted an evidentiary hearing for the sole purpose of determining admiralty jurisdiction in the above styled case. Having heard the testimony of several witnesses and reviewed the exhibits admitted into evidence and having otherwise reviewed the record and being duly advised, it is hereby,

ORDERED AND ADJUDGED that the Motion To Dismiss For Lack of Jurisdiction is Granted and the Motion For Default is Denied.

## I. BACKGROUND

Plaintiff, Bill Fowler, Inc., filed a complaint to collect for goods and services rendered .to a vessel. The Defendants are, John Stadler Jr., Equipment Leasing Co. of America, Inc., and the M/V "Shrew" a 23′ Sea Craft [Collectively hereinafter referred to as Defendants].

Plaintiff claims this Court has admiralty and maritime jurisdiction within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of the United States and this Honorable Court. Specifically, Plaintiff claims that at the request of the Defendants, Plaintiff furnished certain materials, supplies, services and labor to Defendants' vessel in the approximate amount of $60,000.00. Apparently, Defendants have made partial payments in the amount of $21,000.00 leaving a balance due of approximately $39,000.00. Plaintiff basically claims admiralty and maritime jurisdiction in that the claim is one for repairs or supplies furnished to a vessel within the meaning of 46 U.S.C. § 971.

**1116**

Defendants have moved this Court to dismiss the cause of action because the Court lacks admiralty jurisdiction. Defendants contend that the action is founded upon a contract for the construction of a vessel or for labor performed and materials furnished for the construction of the vessel and therefore not a maritime contract cognizable in admiralty. In the instant cause of action, Defendants note that Defendant, EQUIPMENT LEASING CO. OF AMERICA, the registered owner of the vessel contracted with Plaintiff to install, under the direction of and on the premises of the shipbuilder, WILLIAM S. POTTER, JR., [POTTER], and KSB, INC./SEAMARK SALES, certain electronic equipment and customizing prior to the completion of the building of the vessel. Moreover, Defendants allege that the work on the vessel has been neither completed nor accepted by her owner and final sea trials have not been performed.

In order to establish a firm factual basis upon which to make a determination as to whether this Court has admiralty jurisdiction, a hearing was held on Thursday, February 10, 1983 at 1:30 p.m. Several witnesses testified, and one such witness was John Stadler Jr., [STADLER], who testified that he purchased a 23′ sea craft but had hired a shipbuilder, POTTER, to virtually remake the vessel. In this regard his testimony established that POTTER was to supervise the construction of the vessel to meet Defendant's intended purpose of fishing and entertaining corporate clients and executives off the coast of the Bahamas. Pipe welders were hired to install a tuna tower, extra gas tanks were installed and Plaintiff was enlisted to bring the wiring of the vessel up to certain electrical standards, and to install a sophisticated communications package for operation in isolated areas. In addition to supervising the foregoing, POTTER was also to do certain other modifications to the hull and to the interior design such as seats etc.

Further testimony by STADLER revealed that numerous sea trials had been run with the vessel. Although STADLER brought his family on some of these trials and even spent the night on one occasion, it is clear from the testimony that the vessel was still under construction and had not even been accepted by STADLER from POTTER. This Court finds that the sea trials were made for the primary purpose of evaluating improvements. STADLER stated that reports were made on these sea trials and a "punch list" delivered to POTTER.

The above testimony was substantiated by the testimony of POTTER. He further elaborated that the vessel was not ready to go to sea, and that he was still working on the construction. Moreover, POTTER testified that the vessel in his opinion is not safe for the purposes that Defendant, STADLER, intends to use it.

Other testimony was taken from Bernie Layson, who is the president of Layson Marine, a company which distributes the sea craft. He stated that when this particular vessel was sold it could have been used in and around Biscayne Bay for pleasure purposes. However, his testimony further established an awareness on his part that, Defendant, STADLER, did not consider the vessel complete and intended to have additional electrical work done someplace else, and that POTTER was to do certain other construction on the vessel.

Although this Court does not elaborate further on other testimony and evidence presented, it has considered everything offered and admitted into evidence and concludes based on the facts presented that the work done by the Plaintiff for the Defendants was construction of a new vessel and therefore outside this Court's admiralty and maritime jurisdiction.

## II. ANALYSIS

It is firmly established that contracts for the construction of a ship or to supply materials for the construction of a ship are not within the admiralty jurisdiction of this Court. *Thames Towboat Co. v. The Francis McDonald,* 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920); *The Boat La Sambra v. Lewis,* 321 F.2d 29 (9th Cir.1963).

The theory is that a contract to construct an entirely new ship is nonmaritime because it is not closely enough related to any rights and duties pertaining to commerce and navigation by water. 254 U.S. at 244, 41 S.Ct. at 66.

The Court does not find the situation in this case involving reconstruction of a vessel as in *The Jack-O-Lantern; New Bedford Dry Dock Co. v. Purdy,* 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922) or *American Shipbuilding & Dock Corp. et al. v. Rourke,* 4 F.2d 845 (5th Cir.1925). The Plaintiff attempts to draw an analogy between the present case and those cases, where a barge is already launched and involved in some form of sea duty. In the case at hand, the Court finds there is no such close relationship between the vessel in question and those rights and duties pertaining to commerce and navigation by water.

The Court finds the instant case strikingly similar to those cases which involve the construction of a new ship. For instance, in *The Francis McDonald, supra,* a plaintiff sought recovery for supplies furnished and repairs made to a schooner. There the company began construction and launched the hull. When the company could not complete the work, another company undertook the job and the hull was towed to its yard. While lying at the yard apparently in a stream, materials, labor etc., were furnished the vessel. Again it was towed to a third company who finished the vessel.

Appellant's were the individuals who furnished labor, etc., to the vessel while it was at the second location above. The Court was confronted with the issue whether appellant's contract to furnish materials, work and labor for the schooner's completion, made after she was launched but while yet not sufficiently advanced to discharge the functions for which intended, was within the admiralty and maritime jurisdiction of the court. Appellant in *The Francis McDonald* argued there is a broad distinction between a contract for the complete construction of a ship or supplying materials therefor, and one for work and material to finish a vessel after she is launched and

waterborne. 254 U.S. at 243–44, 41 S.Ct. at 66.

The Court rejected appellant's argument and found that "contracts to construct entirely new ships are nonmaritime because not nearly enough related to any rights and duties pertaining to commerce and navigation by water." *Id.* at 244, 41 S.Ct. at 66. Moreover, the Court concluded the same reasoning applies "to agreements made after the hull is in the water, for the work, and material necessary to consummate a partial construction and bring the vessel into condition to function as intended." *Id.* at 245, 41 S.Ct. at 66.

More recently the Ninth Circuit Court of Appeals in *The Boat La Sambra v. Lewis,* 321 F.2d 29 (9th Cir.1963), examined a situation where a libelant commenced a suit to enforce maritime liens for furnishing a ship-to-shore radio to one vessel and an automatic pilot to another. The Ninth Circuit Court of Appeals treated both cases together because they tendered the same question with regard to admiralty jurisdiction.

The facts in *The Boat La Sambra* establish that both appellants contracted to purchase vessels from K.W. Boat Sales. Both appellants' contracts also provided that the boats were to be delivered to their new owners equipped with certain electrical apparatus including a radio for one vessel and an automatic pilot for the other. K.W. Boat Sales did not handle the installation of the extra equipment and therefore contracted the same to Lewis. Lewis knew the vessels were new, and had never previously been in service. He began performance of his work prior to launching and completed the work while the vessels were still in K.W.'s slip.

The Ninth Circuit Court of Appeals after discussing *The Francis McDonald, supra,* examined *The Count De Lesseps,* 17 F. 460 (D.Penn.1883). In *The Count De Lesseps,* a floating scow was constructed in New Jersey and towed to Pennsylvania where additional equipment was installed. The court concluded that the additional equipment was part of the original construction and

emphasized that "[a]ll the materials and work were contemplated as necessary to complete the structure from the beginning * * *." 321 F.2d at 31 *quoting The Count De Lesseps,* 17 F. 460 (D.Penn.1883).

After considering the above cases, the court noted that Lewis knew the accessories in question constituted original equipment; he knew their function was to make the vessels safer and more useful as pleasure craft and among other things were installed when the boats were still undelivered and at the dealers premises. Based upon the above conclusions, the court found the contracts outside its admiralty jurisdiction. 321 F.2d at 31.

■ Applying all the above cases to the case at hand, this Court finds it also is without admiralty jurisdiction over the present case. The Plaintiff in this case knew that Defendant, STADLER, had hired POTTER to construct the vessel. He further acknowledged before this Court that many of the items he was to install in the vessel were original equipment. Moreover, both STADLER and POTTER testified that the vessel is still incomplete and has not been accepted by STADLER. Finally, it is apparent to this Court that the vessel is still under construction and not yet completed.